BESSIE J. CUMMING, by Guardian, etc., Respondent, *v.* THE BROOKLYN CITY RAILROAD COMPANY, Appellant.

Where in an action to recover damages for injuries sustained by a child of tender years, who, when passing along a public street where it was crossed by a railroad track, was struck by a train, it appeared that the child exercised the degree of care and prudence required of a person *sui juris, held,* it was immaterial that the parents of the child were guilty of negligence in permitting it to be on the streets; and so that, the reception of improper evidence offered to excuse such negligence was not a ground for reversal.

*It seems* evidence that the parents were unable to hire any servant or person to aid the mother in looking after the child, is not competent to rebut proof of negligence on her part.

In such an action, *held,* that a municipal ordinance, prohibiting railroad companies from stopping their cars at a street intersection, so that they will interfere with travel on the cross streets, was properly received in evidence on the question of defendant's negligence, in connection with evidence that a train had stopped in violation of this ordinance, which prevented the plaintiff from seeing the approaching train.

(Argued January 20, 1887; decided February 8, 1887.)

THIS action was brought to recover damages for personal injuries sustained by plaintiff, alleged to have been caused by defendant's negligence.

The following is the opinion in full:

"The defendant operates a railroad, from the city of Brooklyn to Fort Hamilton, and runs its cars by means of a dummy engine. Its tracks are laid through Third avenue, which runs about north and south, where it crosses Thirty-ninth street at right angles.

"There was enough proved to make it proper to submit to the jury the question of the negligence of the defendant.

The injury occurred on the 10th of September, 1883, in the afternoon.   Evidence was given that one train of two cars drawn by a dummy had come up on the east track, on its way to Brooklyn, and had stopped at Thirty-ninth street for a moment or two, the dummy reaching somewhat beyond the north crossing of the street, while the rear end of the rear car was still some seventeen or eighteen feet south of the south crosswalk; thus totally obstructing the passage on both crosswalks at Thirty-ninth street.   The plaintiff was standing on the curb-stone, near the south-east corner of the avenue and the street, waiting for the train to proceed on its way to Brooklyn, and just about the time the train started she left the sidewalk and commenced to cross the street towards the west, and arrived at where the up train was passing at about the time the rear end of the second car was passing over the crossing, so that she left the north flag-stone of the crosswalk, and stepped to the south one and passed to the rear of the car and went towards the west or down track, and just as she stepped towards it she was struck by the dummy drawing a train coming from Brooklyn, and which she could not see until she stepped from behind the train going to Brooklyn.   There was an ordinance of the city put in evidence, which provided that ' cars stopping at a street intersection shall stop at the further walk thereof so that the cars shall not, when stopped, interfere with the travel on the cross streets.'

" The train from the north came down making no noise by either bell or whistle, and was going very slowly in order to stop at the Thirty-ninth street crossing.   The crossing at this place was very much used, there being, perhaps, no other street along the route as much occupied as that.   To stop its cars so as to wholly obstruct the street, the effect of which was to prevent persons in the situation of the plaintiff from seeing any train coming from Brooklyn until the same was actually upon them, was certainly a fact proper to be submitted to a jury upon the question of whether the defendant was guilty of negligence in the running or management of its trains.

" The defendant claimed that the mother of the plaintiff was guilty of negligence in permitting the child to be at large,

and that as the child was but five years of age and *non sui juris*, this negligence of the mother was imputable to the child, and she could not therefore recover.   To rebut this claim of negligence, the plaintiff proved that the mother was unable to hire any servant or person to aid her in looking after the child, and hence it was claimed, that as negligence is to be proved or disproved, from all the surrounding circumstances, this evidence of inability was proper.

"We are not prepared to sustain the correctness of the ruling which admitted this evidence, but it was addressed to the point of showing that the mother was not, under the circumstances, guilty of negligence, and such fact is entirely immaterial if the child herself was guilty of none. (*Ihl* v. *42d st. & C. R. R.*, 47 N. Y. 317.)  No facts were proved which showed any negligence on the part of the plaintiff.   She was on a public street, and about to cross it, and waited for one train to pass the crosswalk on which she was.   The street was a crowded one, and she naturally desired to get across it as soon as she reasonably could, and thus get out of danger from the carts, wagons and other vehicles in such street.   As the car reaches her crosswalk she steps from one stone to the other and passes to the rear for the purpose of crossing and is struck by the other dummy before she has even got upon the track. In all this she acted as any one might who was taking ordinary care, and who was desirous of getting across a crowded street over a somewhat dangerous crossing, as soon as conveniently it could be done.

" The greatest difficulty in the plaintiff's case lies in the charge of the learned judge.   He said to the jury that if they found defendant 'omitted precautions which they should have adodted in order to prevent injury to people on this highway, then they are responsible.'   Again he said that 'it is for you to say, under the circumstances, whether or not the defendants should have adopted other precautions at this place than those which they did observe.'

"If the court by this charge submitted the question to the jury to say in a general way what precautions should have been adopted by defendant to prevent injury to the people on the street, it undoubtedly was error.   Under such a charge

the jury might find a flagman was a proper precaution, or gates, or that a man should run in front of the cars, or anything else which should commend itself to the judgment of the jury. Such has been held not to be the measure of liability of a corporation in the situation of defendant. (*Beisiegel* v. *N. Y. C. R. R. Co.*, 40 N. Y. 9; *Dyer* v. *E. R. Co.*, 71 id. 228; *Houghkirk* v. *D. & H. C. Co.*, 92 id. 219.)

" We think, however, that such is not the fair import of the charge, taken as a whole. The judge commenced his charge upon this subject by saying that the defendant had a right to operate its railroad over the street in question. The context shows he meant by this nothing more than that the defendant had a right to run its cars over the street; for, he continues by saying, that while a pedestrian or person in a vehicle can avoid the railroad the engines and cars, on the contrary, are confined to the track; they must run upon that and they cannot turn to the right or to the left. Still, on the same subject, the judge continues and states that the railroad company, while bound to operate its road so as not to injure anybody, yet it was only bound to exercise ordinary care, and if careful, and still an accident happened, the defendant would not be liable. Then he adds the part objected to, that if on the contrary you find they omitted precautions which they should have adopted, in order to prevent injury to people upon this highway, then they are responsible.

" The duty of the company, as laid down by the judge in this sentence, seems clearly to be confined to the ' operation of its railroad,' and we have seen that in using such expression the judge meant only to say that in running its cars, or in their management, the defendant need only use ordinary care, but that if in thus running or managing its cars it omitted precautions, which, in the use of ordinary care it should have adopted in order to prevent this injury, then it was liable.

" The other portion of the charge relates to the failure to sound the whistle or ring the bell. The charge was explicit that there was no statutory duty to do either, but it left it to the jury to say whether, under all the circumstances, they should have adopted some other precautions than those they observed regarding the running of the train. We put the

last condition in for the reason already given that the judge used the expression ' operate their railroad ' as meaning under the circumstances, run their cars ; and with reference to this portion of the charge it is still more apparent that we are right in such interpretation, for, after using that expression, the judge continues with language as to the propriety, or the reverse, of sounding a whistle or ringing a bell in such a thoroughfare, which only applies to the manner of running the cars, and not in the least to the necessity for a flagman, or gates or anything of that nature. And it is thus perfectly apparent that the question submitted in reality to the jury was as to the lack of any precautions which ordinary prudence would dictate regarding the running of the cars or trains of the defendant.

" If this interpretation of the meaning of the charge be the true one, the exception fails. If there be a doubt as to the meaning thereof in that particular, we think that considering the language used, the whole spirit of the charge and the context, that the defendant should have not alone excepted generally, but should have gone far enough to call the attention of the court to the real error complained of, viz., that possibly the language might be construed too broadly and as meaning that the precautions to be observed related to the whole general manner of conducting the business of the railroad, and might be thought to include the absence of a flagman or of gates at the crossing, even though in the actual running of the train there was no negligence.

" In this case we do not mean to go one step beyond the well settled principles which have been adopted and frequently announced by this court. We simply say that the fair import of the charge, taken as a whole, is in accordance with such principles.

" The defendant excepted to the refusal of the judge to charge that the ordinance put in evidence related to railroads operated with horse-power and not to those operated with steam power.

" We think there was no error in such refusal. The other sections of such ordinance showed remedies applicable to rail-

roads operated by horse-power, but they do not control the express language of the section in question, which is broad enough to cover the case of a railroad operated by steam. In addition to that, the place for stopping cars, as provided in the ordinance, would commend itself to the good sense and judgment of every one; and even if there were no such ordinance, the failure of the defendant to operate its train in accordance with such a principle might fairly be submitted to a jury upon the question of its negligence in the management and operation of its trains.

"The judgment should be affirmed."

*Nathaniel C. Moak* for appellant.

*B. F. Tracy* for respondent.

PECKHAM, J., reads for affirmance.
All concur.
Judgment affirmed.